# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| FM COAL, LLC, *et al.*,[1] | ) | |
| | ) | Case No. 20-02783 (TOM) |
| Debtors. | ) | |
| | ) | Joint Administration Requested |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (II) GRANTING
ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES,
(III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

FM Coal, LLC, and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), submit this motion (the "Motion") for entry of an interim order, in substantially the form attached hereto as **Exhibit A** (the "Interim Order"),[2] and a final order in substantially the form of the Interim Order, (the "Final Order," collectively with the Interim Order, the "Cash Collateral Orders"), under sections 105, 361, 362, 363, 507(b) and 552 of Title 11 of the United States Code (11 U.S.C. §§ *et seq.*, the "Bankruptcy Code"), and Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (a) authorizing the use of "cash collateral" as that term is defined in section 363 of the Bankruptcy Code, including the Cash Collateral of the Prepetition Secured Parties (as defined herein), (b) granting adequate protection to the Prepetition Secured Parties, (c) modifying the automatic stay imposed under section 362 of the Bankruptcy

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: FM Coal, LLC (1768); Cane Creek, LLC (3207); M. S. & R. Equipment Co., Inc. (3487); Cedar Lake Mining, Inc. (6132); Best Coal, Inc. (2487); and Xinergy of Alabama, Inc. (3009). The Debtors' physical address is 4650 Flat Top Road, Graysville, Alabama 35073 and the mailing address is PO Box 1608, Jasper, Alabama 35502. The Debtors have filed a motion for joint administration with the Court.

[2] Capitalized terms used herein that are not defined shall have the meaning set forth in the Interim Order.

4829-0220-7426.2

Code to the extent necessary to permit the Debtors to implement the terms of the Cash Collateral Orders; and (d) scheduling a final hearing for approval of the Motion on a final basis (the "Final Hearing"). In support of this Motion, the Debtors submit and rely on the *Declaration of David Baker and Tim Turek in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed with the Court simultaneously herewith and incorporated by reference herein. In further support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *General Order of Reference* from the United States District Court for the Northern District of Alabama, dated July 16, 1984, as amended July 17, 1984.  Venue is proper before this Court pursuant to 28 U.S.C. §§  1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.        The bases for the relief requested herein are sections 105, 361, 362, 363, 507(b) and 552 of the Bankruptcy Code, and Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014.

## BACKGROUND

3.        On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the instant cases (the "Chapter 11 Cases").  The Debtors continue to manage and operate their businesses as debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

4.        No trustee, examiner or official committee has been appointed in the Chapter 11 Cases.   Detailed information addressing the Debtors' businesses, their finances and the circumstances leading to the filing of the Chapter 11 Cases is contained in the First Day Declaration.

## RELIEF REQUESTED

5.      The Debtors are seeking to use Cash Collateral of the Debtors' Prepetition Secured Parties (as defined herein), based on information and belief on a consensual basis, to fund operations, maintain their properties and administer these Chapter 11 Cases. The Debtors' access to Cash Collateral is critical to preserving the Debtors' operations and maximizing value for the Debtors' estates. Absent approval of the Interim Order, the Debtors will not have adequate liquidity to operate their businesses sufficiently, to maintain their properties and to pay administrative and restructuring costs associated with these Chapter 11 Cases. Thus, the Debtors respectfully request immediate authority to use Cash Collateral, subject to the terms and conditions set forth in the Interim Order, and request authority to use Cash Collateral on a final basis, subject to the terms and conditions set forth in the Final Order.

6.      By this Motion, the Debtors seek entry of an Interim Order (a) authorizing the Debtors to (i) use Cash Collateral in accordance with the Cash Collateral Orders and the Initial Budget attached hereto as **Exhibit B** (as updated from time to time in accordance with the Cash Collateral Orders, the "Approved Budget"), subject to the Budget Provision; and (ii) provide adequate protection to the Prepetition Secured Parties in connection with, among other things, the use of such Cash Collateral; (b) scheduling the Final Hearing on the Motion; and (c) granting related relief.

## OVERVIEW OF PREPETITION SECURED DEBT

7.      As of the Petition Date, FM Coal has approximately $56 million in total aggregate principal amount of funded debt obligations. On September 1, 2017, FM Coal, as "Borrower", the other Debtors, as "Subsidiary Guarantors", Key Bank National Association, as "Administrative Agent", "Swing Line Lender", "Issuing Agent" and "Collateral Agent" (the "Agent" and collectively with Sumitomo Mitsui Banking Corporation and Caterpillar Financial Services

Corporation, the "Prepetition Secured Parties"), entered into that certain Credit Agreement, dated as of September 1, 2017 (such credit agreement, together with additional documents and ancillary agreements, as may have been amended, restated, supplemented, or otherwise modified from time to time, the "Credit Agreement"). The Credit Agreement provides for the making of loans to FM Coal and the issuance of letters of credit (collectively, the "Letters of Credit") for the account of FM Coal (the "Credit Facility"). More specifically, the Credit Agreement provides for loans in the form of a term loan in the maximum principal amount of $70 million and a revolving loan in the maximum principal amount of $10 million (such underlying Credit Agreement and Letters of Credit together with additional documents and ancillary agreements, as may have been amended restated, or otherwise modified in furtherance of the Credit Facility, herein the "Prepetition Debt Documents"). As of the Petition Date, the principal balance due the Prepetition Secured Lenders pursuant to the Prepetition Debt Documents totaled the aggregate principal amount of $56,000,000.00 plus an unfunded letter of credit in the amount of $4,000,000.00, plus accrued and unpaid interest, fees (including any prepayment fees), expenses penalties, premiums and other obligations incurred in connection therewith (the "Prepetition Obligations").

8.     The Prepetition Obligations bear interest at a rate of four hundred twenty five basis points (4.25%) in excess of the London Interbank Offered Rate ("LIBOR") (and at no time may LIBOR be less than zero), plus a default rate of two hundred basis points (2.00%). The Loans are secured by liens on substantially all of the Debtors' assets except for certain equipment subject to purchase money security interests and certain operating leases.

9.     FM Coal used the proceeds of the Credit Facility (i) to finance a portion of the consideration paid to the sellers as part of the acquisition, (ii) to finance the payment of fees and expenses incurred in connection with the acquisition, (iii) to refinance and replace certain

indebtedness of the Debtors, and (iv) to fund $6 million of the $20 million of principal payments made on the Term Loan.

## **PROPOSED MATERIAL TERMS FOR USE OF CASH COLLATERAL**[3]

• *Proposed Adequate Protection*

9.      The Prepetition Secured Parties are entitled to adequate protection of their respective interests in the Prepetition Collateral (including, without limitation, the Cash Collateral) on which the Prepetition Secured Parties hold perfected security interests as of the Petition Date in an amount equal to the aggregate postpetition diminution in value of the Prepetition Collateral, including any Cash Collateral, from and after the Petition Date (such diminution in value, the "Diminution in Value"), including, without limitation, to the extent such diminution results from the sale, lease or use by the Debtors of the Prepetition Collateral, the subordination of the Prepetition Liens to the Carve-Out, or the imposition of the automatic stay pursuant to Bankruptcy Code section 362 (such adequate protection, as set forth in paragraphs 10 and 11 below, the "Adequate Protection Obligations").

10.      As adequate protection for the Diminution in Value of the Prepetition Collateral, the Debtors' propose as follows:  the Prepetition Secured Parties shall be granted the following claims, liens, rights and benefits, subject to the Carve-Out, as security for the Prepetition Obligations (all such liens and security interests, the "Adequate Protection Liens"), effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements,

---

[3] A full description of all terms associated with the Debtors' use of Cash Collateral are set forth in the proposed interim order attached hereto as Exhibit "A".  While those terms are summarized in this Motion, to the extent that any discrepancies exist between the provisions of this Motion and the provisions in the Cash Collateral Orders, the terms in the Cash Collateral Orders entered by the Court shall govern.

financing statements, mortgages or other similar documents, or the possession or control by the Prepetition Secured Parties of any Postpetition Collateral (as defined below):

(A)    Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected, non-avoidable additional and replacement first priority lien on, and security interest in, all property (including any previously unencumbered property), whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to Bankruptcy Code section 541(a)), of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created that is not subject to valid, perfected and non-avoidable liens other than the Prepetition Liens (collectively referred to as, the "Postpetition Collateral" and collectively with the Prepetition Collateral, the "Collateral"), which liens and security interests shall be senior to any and all other liens and security interests other than the Carve-Out and Professional Fee Escrow.  Causes of action arising under chapter 5 of the Bankruptcy Code are specifically exempted from the Postpetition Collateral, the Collateral and/or the Junior Collateral (as defined below).

(B)    Subject to the Carve-Out and Professional Fee Escrow, pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected non-avoidable junior priority replacement lien on, and security interest in, all property, whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to Bankruptcy Code section 541(a)), property of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, that is subject only to valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date to the extent permitted by Bankruptcy Code section 546(b), which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Prepetition Secured Parties (the "Junior Collateral").

11.    Further, as additional adequate protection, the Debtors propose to pay to the Agent, for the benefit of the Prepetition Secured Lenders, due beginning on the first day of the month

immediately following the Petition Date and each subsequent month thereafter during the pendency of the Chapter 11 Cases, payments in the amount of $116,167.00 to be applied as set forth in the Credit Agreement.

•*Budget Provisions*

12.     The Debtors shall comply in all respects with the provisions of this paragraph 12 (the "Budget Provision"). The initial budget shall cover the 12-week period beginning the business week of the Petition Date (the "Initial Budget Period") and be in the form attached hereto as **Exhibit B** (the "Initial Budget"). On or before the last business day of the ninth week of the Initial Budget Period, the Debtors shall deliver an updated budget (the "Second Budget") for the 12-week period following the Initial Budget Period (the "Second Budget Period"). On or before the last business day of the ninth week of the Second Budget Period, the Debtors shall deliver an updated budget (the "Third Budget" and, together with the Initial Budget and the Second Budget, collectively, the "Budgets") for the 12-week period following the Second Budget Period (the "Third Budget Period"). The Budgets shall be delivered to the Agent, with a copy delivered to the Creditors' Committee.  The Initial Budget will be the first budget utilized for reporting and permitted variance purposes (the "Approved Budget"). The Second Budget and the Third Budget shall be of no force and effect unless and until approved by the Agent.  The Agent shall approve or reject the Second Budget or the Third Budget within seven (7) business days after the last day that delivery thereof is permitted as set forth above; provided that each of the Second Budget and/or the Third Budget shall be deemed approved upon the passage of such seven (7) business day period with no objection raised by the Agent. Upon the approval by the Agent, each of the Second Budget and the Third Budget shall become the "Approved Budget" for the Second Budget Period and the Third Budget Period, as applicable. Every week (beginning with the first full week

after the Petition Date), on the last business day of such week, the Debtors shall deliver to the Agent and the advisors to the Creditors' Committee, a weekly variance report from the previous week comparing the actual cash receipts and disbursements of the Debtors with the receipts and disbursements in the Approved Budget (the "Budget Variance Report"). The Budget Variance Report shall include, among other things, (a) details regarding amounts paid under any order of the Court; (b) a detailed comparison, including commentary, of each week's performance against the Approved Budget; and (c) a detailed comparison, including commentary, of aggregate performance since the commencement of the Approved Budget against such Approved Budget. Any budget variance should not exceed, on an aggregate basis, 10% of the authorized payments set forth in an Approved Budget. In the event the Agent fails to approve the Second Budget and/or Third Budget within the time period allotted herein, the Debtors may seek approval of the respective budget from the Court on an expedited basis. The Agent reserves all rights to object to, or otherwise oppose, any request to the Court by the Debtors seeking approval of the Second Budget or Third Budget.

• *Carve Out and Professional Fee Escrow Provision*

13.     Subject to the terms of the Interim Order and in accordance with the Approved Budget, the Debtors will be authorized to use the Cash Collateral during the period from the Petition Date through and including the Termination Date (as hereinafter defined) for: (a) working capital requirements; (b) equipment maintenance and general mining operations; (c) general corporate purposes; (d) adequate protection payments to the Prepetition Secured Parties as contemplated herein; and (e) the costs and expenses of administering these Chapter 11 Cases; provided that the Debtors shall not be authorized to use Cash Collateral to pay fees or expenses (x) in excess of $50,000.00 per month (the "Committee Monthly Cap") on account of Professional

Persons (as defined herein) retained by any official committee appointed in these Chapter 11 Cases, including any Creditors' Committee, (y) in excess of $10,000.00 (the "Investigation Budget") for the Creditors' Committee to investigate (but not prepare, initiate or prosecute) Claims and Defenses (as defined herein) against the Prepetition Secured Parties before the termination of the Challenge Period (as defined herein), or (z) to initiate or prosecute proceedings or actions on account of any Claims and Defenses against the Prepetition Secured Parties. For the avoidance of doubt and notwithstanding any other provision of this Interim Order, other than the Investigation Budget (which may be used solely for the purposes set forth in paragraph 8 of the Interim Order), no Cash Collateral, Prepetition Collateral or any proceeds thereof, or any portion of the Carve-Out (as hereinafter defined) may be used directly or indirectly by any Debtor, any official committee appointed in the case, including the Creditors' Committee, or any trustee appointed in the Chapter 11 Cases or any successor case, or any other person, party or entity to (i) investigate, object, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of the Prepetition Obligations, the Prepetition Debt Documents, the Prepetition Liens or any action purporting to do any of the foregoing; (ii) investigate, assert or prosecute any Claims and Defenses against the Prepetition Secured Parties or their respective predecessors-in-interest, agents, affiliates, attorneys, advisors or other Secured Party Representatives or any action purporting to do the foregoing in respect of the Prepetition Obligations, the Prepetition Debt Documents and/or the Prepetition Liens; (iii) prevent, hinder, or otherwise delay the Prepetition Secured Parties' enforcement, or realization on the Prepetition Obligations, the Prepetition Collateral, the Cash Collateral, the Prepetition Liens, the Adequate Protection Obligations, or the Adequate Protection Liens in accordance with this Interim Order; or (iv) seek to modify any of the rights granted to the Prepetition Secured Parties hereunder (other than with the consents contemplated hereunder).

14.     For purposes hereof, the "Carve-Out" shall mean the sum of: (A) all fees required to be paid to the clerk of the Court and the Bankruptcy Administrator; (B) reasonable fees and expenses up to $20,000 in the aggregate incurred by a trustee appointed under Bankruptcy Code section 726(b); and (C) subject to the Committee Monthly Cap with respect to Professional Fees incurred by Professional Persons retained by the Creditors' Committee or any other statutory committee appointed in the Chapter 11 Cases, including any Professional Fees permitted to be incurred under the Investigation Budget, and (D) all fees, costs and expenses, billed or unbilled, incurred by professionals retained by the Debtors up to and including the Termination Date (plus a maximum of $75,000 to be applied to fees and expenses incurred by the Debtors' professionals following the Termination Date), to the extent allowed and regardless of the timing of said allowance, whether by interim order, procedural order or otherwise, including all accrued and unpaid reasonable fees, costs, and expenses (the "Professional Fees") incurred by persons or firms retained by the Debtors, the Creditors' Committee or any other statutory committee appointed in the Chapter 11 Cases (if any) pursuant to Bankruptcy Code section 327, 328, or 363 (collectively, the "Professional Persons"); provided that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clause above, on any grounds. For the avoidance of doubt and notwithstanding anything to the contrary herein or in the Credit Agreement, the Carve-Out and the Professional Fee Escrow shall be senior to all liens and claims arising out of, or related to, the Credit Agreement or Prepetition Debt Documents, including the Prepetition Liens, Prepetition Obligations, the Adequate Protection Liens, Adequate Protection Obligations and any and all other forms of adequate protection, liens or claims securing or relating to the Prepetition Obligations.  Without limiting or impairing the Prepetition Liens, the Adequate Protection Liens or Adequate Protection Obligations of the

Case 20-02783-TOM11    Doc 9    Filed 09/01/20    Entered 09/01/20 16:39:03    Desc Main
Document      Page 10 of 55

Prepetition Secured Parties, the Carve-Out amounts set forth in the Approved Budget for Professional Fees and the Bankruptcy Administrator's Office Quarterly Fees (the "Quarterly Fees") shall be set aside weekly (with, for purposes of calculation, the Petition Date, representing the day upon which the first weekly set aside shall be made) and held by the Debtors in a separate segregated account (the "Professional Fee Escrow") for the Professional Persons for the sole purpose of funding allowed fees and expenses of Professional Persons and the Quarterly Fees. To the extent funds in the Professional Fee Escrow account are not used for such purposes, such amount of unused funds shall be paid to the Agent, for itself and for and on behalf of the Prepetition Secured Lenders, for application to the Prepetition Secured Claims. Any amounts payable by the Debtors to Professional Persons on account of Professional Fees shall only be paid upon allowance or authorization by the Court from funds on deposit in the Professional Fee Escrow.

• ***Termination Provision***

15.     The Debtors' right to use the Cash Collateral pursuant to a Cash Collateral Order shall automatically terminate (the date of any such termination, the "Termination Date") without further notice or court proceeding, and without prejudice to the Carve Out or Professional Fee Escrow on the earliest to occur of (i) 45 days after the Petition Date (unless such period is extended with the consent of the Agent), if the Final Order on the Motion has not been entered by this Court on or before such date, (ii) any such expiration date set forth in the Final Order that is not thereafter extended by a subsequent order, (iii) the effective date of any confirmed chapter 11 plan in any of the Chapter 11 Cases, (iv) the date of the consummation of a sale or other disposition of all or substantially all of the assets of the Debtors, and (v) the occurrence of any of the events set forth in this paragraph 15(a) through (f) below, unless waived by the Agent (each of the following events, a "Termination Event" and collectively, the "Termination Events"):

(a)     the Debtors' failure to: (i) use the Collateral, including without limitation Cash Collateral, in accordance with the Approved Budget and the Budget Provision or otherwise comply in any respect with any provision of this Interim Order (including, without limitation, the failure to timely make the payments identified in paragraph 12); or (ii) comply with any other covenant or agreement specified in this Interim Order; in each case where such failure shall have continued unremedied for five (5) business days following the occurrence of such failure;

(b)     the date the Interim Order (or the Final Order, as applicable), or any provision of thereof, shall for any reason be reversed, modified, vacated or stayed, or cease to be valid and binding, or any Debtor shall so seek or assert such relief in any pleading filed in any court;

(c)     the date (i) any Chapter 11 Case shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code or any Debtor shall file a motion or other pleading seeking the dismissal or conversion of any Chapter 11 Case pursuant to Bankruptcy Code section 1112; or (ii) a trustee, responsible officer, or an examiner (other than a fee examiner) pursuant to Bankruptcy Code section 1104, or a receiver or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), is appointed or elected, as applicable, in any Chapter 11 Case, any Debtor applies for, consents to, or acquiesces in, any such appointment, or the Court shall have entered an order providing for such appointment, in each case without the prior written consent of the Agent in its sole discretion;

(d)     other than with respect to the Carve-Out and Professional Fee Escrow, any Debtor shall create or incur, or the Court enters an order granting, any claim which is pari passu

Case 20-02783-TOM11    Doc 9    Filed 09/01/20    Entered 09/01/20 16:39:03    Desc Main
Document      Page 12 of 55

with or senior to any of the Prepetition Liens or Prepetition Obligations or the Adequate Protection Liens and Adequate Protection Obligations granted under this Interim Order;

(e)     the consummation of a sale or disposition of any material assets of the Debtors other than in the ordinary course of business or as expressly authorized by the Prepetition Secured Lenders and/or the Court;

(f)     commencement of any action, including the filing of any pleading, by any Debtor, or direct or indirect non-debtor affiliate or subsidiary of a Debtor, or any Debtor Representative, against any of the Prepetition Secured Parties with respect to any of the Prepetition Obligations, the Prepetition Debt Documents or the Prepetition Liens;

(g)     the entry of an order granting relief from the automatic stay with respect to any material property or asset of a Debtor; or

(h)     a Debtor shall knowingly furnish or knowingly make any false, inaccurate, or incomplete representation, warranty, certificate, report, or summary to the Prepetition Secured Lenders.

16.     Upon the occurrence of a Termination Event and following the giving of not less than five (5) business days' advance written notice (the "Enforcement Notice") to counsel to the Debtors, counsel to the Creditors' Committee (if any) and the Bankruptcy Administrator (the "Notice Period"), and subject to the Carve Out and Professional Fee Escrow protections set forth herein, the Agent may exercise any remedies to it under this Interim Order, the Credit Agreement and applicable non-bankruptcy law, including but not limited to (a) set off and apply immediately any and all amounts in accounts, other than the Professional Fee Escrow, maintained by the Debtors against the Adequate Protection Obligations and Prepetition Obligations owed to the Prepetition Secured Parties and otherwise enforce rights against the Collateral for application

towards the Adequate Protection Obligations and Prepetition Obligations; (b) take any and all actions necessary to take control of the Prepetition Collateral and/or the Collateral, including any Cash Collateral; and (c) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the Prepetition Debt Documents or applicable law to effect the repayment and satisfaction of the Adequate Protection Obligations and Prepetition Obligations owed to the Prepetition Secured Parties. The rights and remedies of the Agent specified herein are cumulative and not exclusive of any rights or remedies that they may otherwise have. The only permissible basis for the Debtors, the Creditors' Committee (if any), the Bankruptcy Administrator or any other party to contest, challenge or object to an Enforcement Notice shall be solely with respect to the validity of the Termination Event(s) giving rise to such Enforcement Notice (*i.e.* whether such Termination Events validly occurred and have not been cured or waived in accordance with this Interim Order). The automatic stay pursuant to Bankruptcy Code section 362 shall be automatically terminated at the end of the Notice Period, without further notice or order of the Court, unless the Agent elects otherwise in a written notice to the Debtors, and the Agent shall be permitted to exercise all rights and remedies, including with respect to the Collateral (including, without limitation, any Cash Collateral), set forth in this Interim Order, the Credit Agreement, and as otherwise available at law without further order or application or motion to the Court, and without restriction or restraint by any stay under Bankruptcy Code sections 362 or 105 or otherwise.

•***Binding Releases by Debtors***

17. The stipulations, releases and admissions contained in the proposed Interim Order, including in paragraph 5 thereof, shall be binding upon the Debtors and their respective Debtor Representatives in all circumstances. The stipulations, releases and admissions contained in this

Interim Order, including in paragraph 5 hereof and the protections afforded the Carve Out and the Professional Fee Escrow, shall be binding upon all other parties in interest, including the Creditors' Committee (if any) or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), unless and to the extent (a) the Creditors' Committee (if any) or any other party in interest other than any Debtor (including any Trustee), in each case, to the extent having requisite standing, has duly filed an adversary proceeding challenging in whole or part the validity, enforceability, priority or extent of the Prepetition Obligations or the liens on the Prepetition Collateral securing the Prepetition Obligations held by or on behalf of the Prepetition Secured Parties or otherwise asserting or prosecuting any avoidance actions, recharacterization, subordination, "lender liability", or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against the Prepetition Secured Parties in connection with any matter related to the Prepetition Obligations, or the Prepetition Collateral or the Prepetition Liens by no later than the later of (i) in the case of any such adversary proceeding filed by a party in interest with requisite standing, seventy-five (75) days after the date of entry of the Interim Order, provided that if a Creditors' Committee is appointed prior to the expiration of such seventy-five (75) days, such Creditors' Committee shall have sixty (60) days from the date of its appointment to file such an adversary proceeding, and (ii) any such later date agreed to in writing by the Agent (the time period established by the later of the foregoing clauses (i) and (ii), the "Challenge Period"), and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such Claim or Defense in any such duly filed adversary proceeding. If no such adversary proceeding is timely filed prior to the expiration of the Challenge Period by a Creditors' Committee or a party in interest, in any case which has the appropriate standing, without further order of this Court: (x) the

Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "<u>claim</u>" (as defined in the Bankruptcy Code), impairment, subordination (whether equitable, contractual or otherwise) or other Challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law, for all purposes in these Chapter 11 Cases and any subsequent chapter 7 cases; and (y) the Prepetition Obligations, the Prepetition Debt Documents, and the Prepetition Liens shall not be subject to any other or further Challenge and any party in interest shall be forever enjoined and barred from taking any such action or seeking to exercise the rights of the Debtors' estates , including any successor thereto (including any Debtor Representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period). If any such adversary proceeding is timely filed by a party in interest with appropriate standing prior to the expiration of the Challenge Period, the stipulations and admissions contained in this Interim Order, including in paragraph 5 hereof, shall nonetheless remain binding and preclusive (as <u>provided</u> in the second sentence of this paragraph) on any Creditors' Committee and any other Person (as defined in the Credit Agreement), including any Trustee, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding. Nothing in this Interim Order vests or confers on any Person, including a Creditors' Committee (if any) or Trustee, standing or authority to pursue any cause of action belonging to the Debtors or their estates.

<b><u>THE DEBTORS' USE OF CASH COLLATERAL IS NECESSARY</u></b>

18.     The Debtors require access to the Prepetition Collateral, including Cash Collateral, to satisfy payroll, pay suppliers, meet overhead, pay utility expenses, make adequate protection payments, pay professionals as well as to make any other payments permitted or required under

Case 20-02783-TOM11    Doc 9    Filed 09/01/20    Entered 09/01/20 16:39:03    Desc Main
Document        Page 16 of 55

the Interim Order. The ability to satisfy these expenses as and when due is essential to the continued management, operation and preservation of the Debtors' business and property during the pendency of these proceedings and avoid immediate and irreparable harm to their estates. In the normal course of business, the Debtors use cash on hand and cash flow from operations and other sources to fund working capital, capital expenditures and for maintenance of their business and properties. Absent access to Cash Collateral, the Debtors will not have adequate unencumbered cash on hand to pay these necessary expenses, and therefore, the uninterrupted use of Cash Collateral is critical.

19. The use of Cash Collateral by the Debtors will be subject to the Approved Budget in accordance with the Budget Provision. The Interim Budget is anticipated to be adequate, considering all available assets, to pay the amounts sought in the "first day" motions, including payment of critical vendors and other administrative expenses due or accruing during the period covered thereby.

20. The terms and conditions of the Debtors' use of Cash Collateral as set forth in the proposed Interim Order and the Approved Budget (a) are, taken as a whole, fair and reasonable under the circumstances; (b) reflect the Debtors' reasonable exercise of business judgment consistent with their fiduciary duties; and (c) are supported by reasonably equivalent value and fair consideration. Accordingly, the relief is warranted under the circumstances.

## THE ADEQUATE PROTECTION PROVISIONS ARE APPROPRIATE

21. The Debtors' use of property of their estates, including "cash collateral," is governed by section 363 of the Bankruptcy Code.[4] Pursuant to section 363(c)(2) of the Bankruptcy

---

[4] The Bankruptcy Code defines "cash collateral" as follows:

Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the

Case 20-02783-TOM11    Doc 9    Filed 09/01/20    Entered 09/01/20 16:39:03    Desc Main
Document    Page 17 of 55

Code, a debtor may use cash collateral as long as "<u>(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use,</u> sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(C)(2.) Based on the Debtors' information and belief, the Prepetition Secured Parties have either consented to the use of Cash Collateral, or by and through the Agent, have agreed not to object to such use. In exchange for the use of Cash Collateral and other transactions contemplated hereby, the Debtors propose, as adequate protection pursuant to sections 361 and 363 of the Bankruptcy Code, to grant the Prepetition Secured Parties replacement liens on all Postpetition Collateral and liens on unencumbered Collateral to compensate the Prepetition Secured Creditors for any Diminution in Value in the Prepetition Collateral resulting from, among other things, the use of their respective interests in any Cash Collateral or the use, sale or other disposition of their respective interests in other Prepetition Collateral, the establishment of the Carve-Out, the Professional Fee Escrow and the imposition of the automatic stay.

22.    Adequate protection can be provided in various forms. *See, e.g., In re Continental Airlines, Inc.,* 154 B.R. 176, 180-181 (Bankr. D. Del. 1993) (courts have discretion to in determining what form of adequate protection to grant). Although the Bankruptcy Code does not define the term "adequate protection," it provides a non-exhaustive list of types of adequate protection, including lump sum or periodic cash payments, replacement liens, administrative priority claims and "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in such property. *See* 11 U.S.C. § 361. What constitutes adequate protection is determined

---

proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as <u>provided</u> in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

Case 20-02783-TOM11    Doc 9    Filed 09/01/20    Entered 09/01/20 16:39:03    Desc Main
Document        Page 18 of 55

on a case-by-case basis. *See, e.g., In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984) (recognizing that there must be "an individual determination" of whether a secured creditor's interest in cash collateral is adequately protected); *In re Columbia Gas Sys., Inc.*, 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992; *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006) ("The term 'adequate protection' is intended to be a flexible concept.").

23.     The essential purpose of adequate protection is to protect against the diminution of a secured creditor's collateral during the period when such collateral is being used by the debtor in possession. *See In re Delta Res., Inc.*, 54 F.3d 722, 730 (11th Cir. 1995) ("creditor's interest in property which must be adequately protected encompasses the decline in the value of the collateral only, rather than perpetuating the ratio of the collateral to the debt."); *In re Cent. Park Avenue Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal of adequate protection is to safeguard the secured creditor from diminution in value of its interest during the chapter 11 reorganization."); *In re Monroe Park*, 17 B.R. 934 (D. Del. 1982) (adequate protection requires a debtor to propose some form of relief that will preserve the secured creditor's interest in collateral during the case).

24.     Courts recognize that the preservation of the going concern value of secured lenders' collateral constitutes adequate protection of such secured lenders' interest in such collateral. *See, e.g., In re Wrecclesham Grange, Inc.*, 221 B.R. 978, 981 (Bankr. M.D. Fla. 1997) ("as long as the debtor generates a continuous income stream, the debtor's use of the rental income does not diminish the value of the collateral."); *In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Cardinal Indus. Inc.*, 118 B.R. 971, 981 (Bankr. S.D. Ohio 1990)

(ruling that secured lenders were adequately protected by debtor's use of funds to maintain and manage encumbered properties).

25. The Debtors submit that the foregoing protections as well as the fact that the use of Cash Collateral will enable the Debtors to preserve value by maintaining their properties and businesses and adequately protect the Prepetition Secured Parties from any Diminution in Value. Therefore, the Debtors' requested use of Cash Collateral and the protections afforded the Prepetition Secured Parties are reasonable and appropriate under the circumstances.

26. Finally, the terms of the Interim Order, which were negotiated in good faith and at arm's length, with the relevant parties represented by experienced counsel, are fair and reasonable. Accordingly, the Prepetition Secured Parties should be provided with the benefit and protection of section 363(m) of the Bankruptcy Code, such that if any provision of the Cash Collateral Orders are later modified, vacated, stayed or terminated by subsequent order of this or any other court, such reversal, stay, modification or vacatur shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Liens arising or incurred prior to the date of the entry of an order granting such reversal, stay, modification or vacatur; or (ii) the validity, priority or enforceability of the Adequate Protection Liens securing such Prepetition Obligations.

27. In sum, the Debtors, together with the assistance of their financial and legal advisors, have concluded in the sound exercise of their business judgment that the use of Cash Collateral as contemplated under the Interim Order and the proposed Final Order will help preserve the Debtors' value as a going concern.

28. For the foregoing reasons, the Debtors submit that the requested use of Cash Collateral and the proposed protections afforded to the Prepetition Secured Parties are reasonable

Case 20-02783-TOM11    Doc 9    Filed 09/01/20    Entered 09/01/20 16:39:03    Desc Main
Document      Page 20 of 55

and appropriate and in the best interests of the Debtors, their estates and creditors, and therefore should be authorized and approved by this Court.

## MODIFICATION OF THE AUTOMATIC STAY

29.     Section 362 of the Bankruptcy Code provides for an automatic stay upon the filing of a bankruptcy petition. The Debtors request, as contemplated in the Interim Order, a modification of the automatic stay (to the extent applicable) to permit the Debtors to (i) grant the security interests, liens and claims described above as well as to perform such acts as may be requested to assure the perfection and priority of such security interests and liens, and (ii) otherwise implement the terms of the Cash Collateral Orders, including the termination and remedies provisions.

30.     Stay modification provisions of this kind are ordinary and standard features of post-petition debtor-in-possession cash collateral orders and are, in the Debtors' business judgment, reasonable under the present circumstances. Accordingly, the Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the proposed Interim Order.

## IMMEDIATE RELIEF IS NECESSARY TO AVOID
## IMMEDIATE AND IRREPARABLE HARM

31.     Bankruptcy Rule 4001(b)(2) governs the procedures for obtaining authorization to use cash collateral and provides, in relevant part:

> The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such 14-day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(b)(2).

32.     With little to no unencumbered cash, the Debtors have an immediate need to use Cash Collateral, otherwise the Debtors will have difficulty paying their vendors, suppliers,

employees and otherwise satisfying their on-going obligations. The Debtors will also not be able to pay the professionals necessary for a successful chapter 11 process. Thus, funds are urgently needed to meet all of the Debtors' working capital and other liquidity needs.

33.     The Debtors' ability to fund their operations through the use of Cash Collateral is crucial to the preservation and maintenance of the going-concern value of the Debtors' estates. Accordingly, the Debtors request that the Court conduct an interim hearing on the Motion and authorize the Debtors to use Cash Collateral on an emergency interim basis on the terms set forth in the Interim Order to prevent immediate and irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b).

34.     In light of the foregoing, the Debtors have satisfied the requirements of Bankruptcy Rule 4001(b) to support immediate use of Cash Collateral pending the Final Hearing. Accordingly, to prevent the irreparable harm that will inure to the Debtors' estates, creditors and parties in interest absent Court approval of this Motion, the Debtors respectfully request that the Court grant the relief requested herein and authorize the immediate use of the Cash Collateral pursuant to the terms and conditions set forth in the Interim Order.

35.     The Debtors seek immediate authorization for the relief contemplated by this Motion. Pursuant to Bankruptcy Rule 6003(b), the Court cannot grant "a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within twenty-one (21) days of the filing of the petition unless the relief is "necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b). In the absence of immediate relief, the Debtors' attempts to maintain the value of their estates during the pendency of these Chapter 11 Cases will be immediately and irreparably jeopardized. Thus, the Debtors submit that the requirements of Bankruptcy Rule 6003(b) are met

and that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

36. In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). For the reasons set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

## **REQUEST FOR FINAL HEARING**

37. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court schedule the Final Hearing as soon as practicable, but in no event later than 30 days following the entry of the Interim Order and establish the deadline prior to the final hearing for parties to file objections to the Motion pursuant to the terms of the Interim Order.

## **NOTICE**

38. Notice of this Motion will be provided to: (i) the Office of the Bankruptcy Administrator for the Northern District of Alabama; (ii) counsel to the Agent, Reed Smith LLP, 1717 Arch Street, Suite 3100, Philadelphia, PA 19103, Attn: Matthew E. Tashman, Esq. and Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, Alabama 35203, Attention: Derek F. Meek; (iii) the Internal Revenue Service; (iv) the holders of the forty (40) largest unsecured claims against the Debtors, on a consolidated basis; (v) the United States Attorney's Office for the Northern District of Alabama; (vi) the Internal Revenue Service; (vii) the office of the Attorney General for the State of Alabama; (viii) the Securities and Exchange Commission; and (ix) all persons and entities that have filed a request for service of filings in these Chapter 11

Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: September 1, 2020
Birmingham, Alabama

WALLER LANSDEN DORTCH & DAVIS, LLP

/s/ Jesse S. Vogtle, Jr.
Jesse S. Vogtle, Jr.
Eric T. Ray
Paul Greenwood
1901 Sixth Avenue North, Suite 1400
Birmingham, Alabama 35203
Telephone: (205) 241-6380
Facsimile: (205) 214-8787
Email: Jesse.Vogtle@wallerlaw.com
        Eric.Ray@wallerlaw.com
        Paul.Greenwood@wallerlaw.com

*-and-*

John Tishler (request for *pro hac vice* pending)
Tyler N. Layne (request for *pro hac vice* pending)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: John.Tishler@wallerlaw.com
        Tyler.Layne@wallerlaw.com

*Proposed Attorneys for the Debtors and Debtors in Possession*

**Exhibit A**

Case 20-02783-TOM11    Doc 9    Filed 09/01/20    Entered 09/01/20 16:39:03    Desc Main
Document      Page 25 of 55

# FM Coal, LLC
DIP Cash Flow Forecast
(USD 000's)

| | Forecast 1 | Forecast 2 | Forecast 3 | Forecast 4 | Forecast 5 | TOTAL |
|---|---|---|---|---|---|---|
| Actual / Forecast --> | | | | | | |
| Week Number --> | 1 | 2 | 3 | 4 | 5 | |
| Week Start Date --> | 09/01/20 | 09/07/20 | 09/14/20 | 09/21/20 | 09/28/20 | 09/01/20 |
| Week End Date --> | 09/06/20 | 09/13/20 | 09/20/20 | 09/27/20 | 10/04/20 | 10/04/20 |
| **Cash Receipts** | | | | | | |
| Operating Receipts | 1,001 | 997 | 933 | 1,098 | 1,089 | 5,117 |
| Proceeds from sale of equipment | - | - | 500 | - | - | 500 |
| **Total Cash Receipts** | 1,001 | 997 | 1,433 | 1,098 | 1,089 | 5,617 |
| **Operating Disbursements** | | | | | | |
| Payroll Costs | - | (383) | - | (329) | (234) | (946) |
| Fuel | (89) | (89) | (89) | (89) | (89) | (447) |
| Contractors | - | (788) | (422) | (422) | (422) | (2,054) |
| Other Operating Disbursements | - | (91) | (76) | (102) | (91) | (359) |
| **Total Operating Disbursements** | (89) | (1,351) | (587) | (942) | (836) | (3,807) |
| **Net Cash Flow from Operations** | 911 | (354) | 845 | 155 | 253 | 1,810 |
| **Non-Operating Disbursements** | | | | | | |
| Highwall Miner Loan | - | - | - | - | - | - |
| Capital Expenditures | - | - | - | (400) | - | (400) |
| **Total Non-Operating Disbursements** | - | - | - | (400) | - | (400) |
| **Restructuring** | | | | | | |
| Restructuring Fees Escrow | - | (117) | (107) | (117) | (102) | (441) |
| Secured Lender Professional Fees | - | (18) | (18) | (18) | (18) | (70) |
| Bankruptcy Administrator Fees | - | (117) | - | - | - | (117) |
| Adequate Protection Payments | - | - | - | - | - | - |
| Critical Vendor Claims | - | - | - | (400) | - | (400) |
| Utility Deposits | - | - | - | - | - | - |
| Insurance Deposits | - | - | - | - | - | - |
| 503(b)9 Claims | - | - | - | - | - | - |
| General Unsecured Dividend | - | - | - | - | - | - |
| **Total Restructuring** | - | (251) | (124) | (534) | (119) | (1,028) |
| **Net Cash Flow** | 911 | (605) | 721 | (779) | 134 | 383 |
| **Liquidity Summary** | | | | | | |
| Beginning Cash Balance | 195 | 1,106 | 501 | 1,222 | 443 | 195 |
| Net Cash Flow | 911 | (605) | 721 | (779) | 134 | 383 |
| **Total Available Liquidity** | 1,106 | 501 | 1,222 | 443 | 577 | 577 |

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| FM COAL, LLC, *et al.*,[1] | ) | |
| | ) | Case No. 20-02783 (TOM) |
| Debtors. | ) | |
| | ) | Joint Administration Requested |

## INTERIM ORDER (A) AUTHORIZING
## POSTPETITION USE OF CASH COLLATERAL,
## (B) GRANTING ADEQUATE PROTECTION TO PREPETITION
## SECURED PARTIES, (C) SCHEDULING A FINAL HEARING PURSUANT
## TO BANKRUPTCY RULE 4001(b) AND (D) GRANTING RELATED RELIEF

In the motion (the "Motion")[2] (*Docket No. __*) of the above-captioned debtors and debtors in possession (collectively, the "Debtors") , pursuant to sections 105, 361, 362, 363, 507(b) and 552(b) of Title 11 of the United States Code (11 U.S.C. §§ 101 *et seq*., the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 4001, 6003, 6004 and 9014, the Debtors seek entry of this interim order (this "Interim Order") and, following a final hearing subsequent hereto, the entry of a final order on the Motion.  The Interim Hearing was conducted by this Court on September __, 2020.  Having considered the record established by the Debtors at the Interim Hearing (including the First Day Declaration) and this Court having heard and resolved or overruled all objections to the interim relief requested in the Motion, it is

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: FM Coal, LLC (1768); Cane Creek, LLC (3207); M. S. & R. Equipment Co., Inc. (3487); Cedar Lake Mining, Inc. (6132); Best Coal, Inc. (2487); and Xinergy of Alabama, Inc. (3009). The Debtors' physical address is 4650 Flat Top Road, Graysville, Alabama 35073 and the mailing address is PO Box 1608, Jasper, Alabama 35502. The Debtors have filed a motion for joint administration with the Court.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

determined that the interim relief requested in the Motion is in the best interests of the Debtors, their estates and creditors. Following due deliberation and consideration by the Court and sufficient cause having been established,

IT IS HEREBY ORDERED as follows:

1.     The Motion is granted on an interim basis as set forth herein. Any objection to the Motion, to the extent not withdrawn or resolved, is overruled.

2.     Pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *General Order of Reference* from the United States District Court for the Northern District of Alabama, dated July 16, 1984, as amended July 17, 1984, this Court has core jurisdiction over the above-captioned chapter 11 cases (the "Chapter 11 Cases") commenced on September 1, 2020 (the "Petition Date"), this Motion, and the parties and property affected hereby. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     As of the date of this Interim Order, no official committee, including, but not limited to, a committee of unsecured creditors (the "Creditors' Committee"), has been appointed in the Chapter 11 Cases.

4.     The notice provided by the Debtors of the Motion, the relief requested therein and of the Interim Hearing, constitutes due and sufficient notice under the circumstances and complies with Bankruptcy Rules 2002 and 4001(b) and (d). Additional notice of the interim relief sought in the Motion is not required.

5.     Subject to the rights granted herein to certain parties, other than the Debtors, to challenge the Prepetition Secured Parties' claims and liens before the termination of the Challenge Period (as defined herein) as set forth below in paragraph 21, the Debtors admit, stipulate, and agree that:

2

(a)     As of the Petition Date, all of the Debtors were unconditionally indebted and liable to the Prepetition Secured Parties, without defense, counterclaim, offset or other Challenge (as hereinafter defined) of any kind, for the following: all debts, liabilities and obligations of every kind and nature owed by the Debtors under the Credit Facility (such underlying Credit Agreement together with additional documents and ancillary agreements, as may have been amended, restated, supplemented, or otherwise modified, the "Prepetition Debt Documents")[3] with the Prepetition Secured Parties in the outstanding aggregate principal amount of [$56,000,000.00], plus an unfunded letter of credit in the amount of [$4,000,000.00], accrued and unpaid interest, fees (including any prepayment fees), expenses, penalties, premiums and other obligations incurred in connection therewith (the "Prepetition Obligations"), in each case in accordance with the terms of the Credit Agreement and other Prepetition Debt Documents (collectively, the "Prepetition Obligations") which are secured by first priority security interests in and liens (the "Prepetition Liens") on all or substantially all of the assets of the Debtors, including Cash Collateral (as defined herein) (the "Prepetition Collateral");

(b)     The Prepetition Obligations constitute the legal, valid, binding, non-avoidable obligations of the Debtors;

(c)     The Prepetition Liens are valid, binding, perfected, non-avoidable, and enforceable liens on, and security interests in, the Prepetition Collateral;

---

[3] The Prepetition Debt documents set forth certain parameters for when the Agent (or any combination of the Prepetition Secured Parties that constitutes less than the whole) may or may not act on behalf of all the Prepetition Secured Parties.  Notwithstanding any provision in this Interim Order, or any final Order, to the contrary, the use of the defined terms Prepetition Secured Parties as opposed to Agent, and vice versa, is not intended to, nor shall, increase or decrease the rights afforded under the Prepetition Debt Documents to either (i) any one of the Prepetition Secured Parties, or (ii) the Agent, including, but not limited to, with respect to any action that may be taken and/or consent provided. To the extent that a conflict exists between this Interim Order, or any final Order, and the Prepetition Debt Documents with respect to the rights and/or duties of the Prepetition Secured Parties as a whole as opposed to the Agent (or any combination of the Prepetition Secured Parties that constitutes less than the whole), the Prepetition Debt Documents will control.

3

(d)    (i) No portion of the Prepetition Obligations, the Prepetition Liens, the Prepetition Debt Documents, and the transactions consummated and contemplated thereby is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined in the Bankruptcy Code), impairment, subordination or other challenge pursuant to the Bankruptcy Code or applicable nonbankruptcy law (a "Challenge"); (ii) the Debtors do not have any claims, counterclaims, causes of action, defenses, recoupment, disgorgement, setoff rights, or other Challenges related to the Prepetition Obligations, the Prepetition Liens or the Prepetition Debt Documents, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, on or prior to the date hereof, against the Prepetition Secured Parties and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys, advisors and other Secured Party Representatives (as hereinafter defined)[4]; and (iii) the Debtors each irrevocably waive, for themselves, and their subsidiaries, shareholders, affiliates and other Debtor Representatives (as hereinafter defined), any right to raise any Challenge in any way related to the Prepetition Liens, the Prepetition Obligations or the Prepetition Debt Documents. Any order entered by the Court in relation to the establishment of a bar date for any claims (including without limitation administrative expense claims) in any of the Chapter 11 Cases or any successor cases shall not apply to the Prepetition Secured Parties. The Prepetition Obligations, the Prepetition Liens, interests, rights, priorities and protections granted to, or in favor of the Prepetition Secured Parties, as set forth in this Interim Order and in the applicable Prepetition Debt Documents shall

---

[4] Notwithstanding anything to contrary in this Interim Order or any subsequent final order on the Motion, to the extent that unsecured creditor Thompson Tractor Company maintains any type of corporate structure relationship whatsoever to Caterpillar Financial Services Corporation ("Caterpillar Finance"), or may in any way receive any right or benefit herein derivatively through Caterpillar Finance, no provision in this Interim Order or any subsequent final Order on the Motion is intended to, or shall, extend to or apply to Thompson Tractor Company except as may be applicable to any other general unsecured creditor.

4

be deemed a timely filed proof of claim on behalf of the Prepetition Secured Parties in each of these Chapter 11 Cases, and none of the Prepetition Secured Parties shall be required to file a proof of claim with respect thereto;

(e)     Each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its past, present and future predecessors, successors, trustees, examiners, heirs, affiliates, subsidiaries, shareholders, assigns, and other representatives (collectively, "Debtor Representatives") shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably, fully and forever release, remise, acquit, relinquish, irrevocably waive and discharge each of the Prepetition Secured Parties and each of their respective former, current, or future officers, employees, directors, agents, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, predecessors in interest and other representatives (collectively, "Secured Party Representatives") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, Challenges, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description that exist on the date hereof relating to any of the Prepetition Liens, the Prepetition Obligations or the Prepetition Debt Documents or the transactions consummated or contemplated under such documents, including, without limitation, (i) any so-called "lender liability," equitable subordination, equitable disallowance or recharacterization claims or defenses, (ii) any and all claims and causes of action arising under the

5

Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, perfection or avoidability of the Prepetition Liens and the Prepetition Obligations.

(f) The Debtors' acknowledgments, stipulations, and releases in this paragraph 5 shall be binding on the Debtors and their respective Debtor Representatives and, only subject to any action timely commenced by a Creditors' Committee (to the extent appointed) or any other party in interest, and in any case which has the requisite standing, before the expiration of the Challenge Period (as defined herein) as provided in paragraph 21, on each of the Debtors' estates, all creditors thereof, each of the Debtors' respective Debtor Representatives, and all other parties in interest, including, without limitation, any trustee or other representative appointed by the Court, whether such trustee or representative is appointed in cases under chapter 11 or chapter 7 of the Bankruptcy Code;

(g) For purposes of this Interim Order, the term "Cash Collateral" shall mean and include all "cash collateral" as defined in section 363 of the Bankruptcy Code in which the Prepetition Secured Parties have a perfected lien, security interest or other interest, in each case whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise. The Debtors stipulate that any and all of the Debtors' cash, cash equivalents, negotiable instruments, investment property, securities, and any amounts generated from the use, sale, lease or other disposition of the Prepetition Collateral, in each case wherever located, constitute Cash Collateral and Prepetition Collateral of the Prepetition Secured Parties;

(h) As of the Petition Date, the Debtors have not brought and are not aware of any claims, objections, causes of action, or other Challenges, including, without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against the Prepetition Secured Parties

Case 20-02783-TOM11    Doc 9    Filed 09/01/20    Entered 09/01/20 16:39:03    Desc Main
Document      Page 32 of 55

arising out of or related to the Prepetition Obligations, the Prepetition Liens, or any of the Prepetition Debt Documents; and

(i)     To the Debtors' knowledge, as of the Petition Date, there were no other perfected liens on or security interests in the Prepetition Collateral except for the Prepetition Liens.

6.      Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b). Subject to, and effective upon entry of the Final Order, the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Prepetition Secured Parties with respect to proceeds, products, or profits of any of the Prepetition Collateral.

7.      Findings regarding the use of Cash Collateral and Prepetition Collateral include

(a)     Good cause has been shown for the entry of this Interim Order;

(b)     The Debtors have an immediate need to use the Cash Collateral to permit, among other things, the orderly continuation of their businesses, pay their operating expenses, repair equipment and preserve the going concern value of the Debtors:

(c)     The preservation and maintenance of the Debtors' businesses and assets is necessary to maximize value. Absent the Debtors' ability to use Cash Collateral in accordance with the terms hereof and the Approved Budget (as hereinafter defined), the continued operation of the Debtors' businesses would not be possible, and irreparable harm to the Debtors, their estates, and their creditors would occur. Authorization to use the Cash Collateral is therefore (i) critical to the Debtors' ability to maximize the value of these chapter 11 estates, (ii) in the best interests of the Debtors and their estates, and (iii) necessary to avoid immediate and irreparable harm to the Debtors, their creditors, and their assets, businesses, goodwill, reputation, and employees; and

7

(d)     The terms of the use of the Cash Collateral pursuant to this Interim Order are fair and reasonable, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

8.     Subject to the terms hereof and in accordance with the Approved Budget, the Debtors are hereby authorized to use the Cash Collateral during the period from the Petition Date through and including the Termination Date (as hereinafter defined) for: (a) working capital requirements; (b) equipment maintenance and general mining operations; (c) general corporate purposes; (d) adequate protection payments to the Prepetition Secured Parties as contemplated herein; and (e) the costs and expenses of administering these Chapter 11 Cases; provided that the Debtors shall not be authorized to use Cash Collateral to pay fees or expenses (x) in excess of $50,000.00 per month (the "Committee Monthly Cap"), on account of Professional Persons (as defined herein) retained by any official committee appointed in these Chapter 11 Cases, including any Creditors' Committee, (y) in excess of $10,000.00 (the "Investigation Budget") for the Creditors' Committee to investigate (but not prepare, initiate or prosecute) Claims and Defenses (as defined herein) against the Prepetition Secured Parties before the termination of the Challenge Period (as defined herein), or (z) to initiate or prosecute proceedings or actions on account of any Claims and Defenses against the Prepetition Secured Parties.  For the avoidance of doubt and notwithstanding any other provision of this Interim Order, other than the Investigation Budget (which may be used solely for the purposes set forth in this paragraph 8), no Cash Collateral, Prepetition Collateral or any proceeds thereof, or any portion of the Carve-Out (as hereinafter defined) may be used directly or indirectly by any Debtor, any official committee appointed in the case, including the Creditors' Committee, or any trustee appointed in the Chapter 11 Cases or any successor case, or any other person, party or entity to (i) investigate, object, contest, or raise any

8

defense to the validity, perfection, priority, extent, or enforceability of the Prepetition Obligations, the Prepetition Debt Documents, the Prepetition Liens or any action purporting to do any of the foregoing; (ii) investigate, assert or prosecute any Claims and Defenses against the Prepetition Secured Parties or their respective predecessors-in-interest, agents, affiliates, attorneys, advisors or other Secured Party Representatives or any action purporting to do the foregoing in respect of the Prepetition Obligations, the Prepetition Debt Documents and/or the Prepetition Liens; (iii) prevent, hinder, or otherwise delay the Prepetition Secured Parties' enforcement, or realization on the Prepetition Obligations, the Prepetition Collateral, the Cash Collateral, the Prepetition Liens, the Adequate Protection Obligations, or the Adequate Protection Liens in accordance with this Interim Order; or (iv) seek to modify any of the rights granted to the Prepetition Secured Parties hereunder (other than with the consents contemplated hereunder).

9.     The Prepetition Secured Parties are entitled to adequate protection of their respective interests in the Prepetition Collateral (including, without limitation, the Cash Collateral) on which the Prepetition Secured Parties hold perfected security interests as of the Petition Date in an amount equal to the aggregate postpetition diminution in value of the Prepetition Collateral, including any Cash Collateral, from and after the Petition Date (such diminution in value, the "Diminution in Value"), including, without limitation, to the extent such diminution results from the sale, lease or use by the Debtors of the Prepetition Collateral, the subordination of the Prepetition Liens to the Carve-Out, or the imposition of the automatic stay pursuant to Bankruptcy Code section 362 (such adequate protection, as set forth in paragraphs 10 and 11 below, the "Adequate Protection Obligations").

10.     As adequate protection for the Diminution in Value of the Prepetition Collateral, the Prepetition Secured Parties are hereby granted the following claims, liens, rights and benefits:

Case 20-02783-TOM11    Doc 9    Filed 09/01/20    Entered 09/01/20 16:39:03    Desc Main
Document    Page 35 of 55

Subject to the Carve-Out, as security for the Prepetition Obligations, effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Prepetition Secured Parties of any Postpetition Collateral (as defined below), the following security interests and liens are hereby granted to the Prepetition Secured Parties (all such liens and security interests, the "Adequate Protection Liens"),

(A)     Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected, non-avoidable additional and replacement first priority lien on, and security interest in, all property (including any previously unencumbered property), whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to Bankruptcy Code section 541(a)), of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created that is not subject to valid, perfected and non-avoidable liens other than the Prepetition Liens (collectively referred to as, the "Postpetition Collateral" and collectively with the Prepetition Collateral, the "Collateral"), which liens and security interests shall be senior to any and all other liens and security interests other than the Carve-Out and Professional Fee Escrow.  Causes of action arising under chapter 5 of the Bankruptcy Code are specifically exempted from the Postpetition Collateral, the Collateral and/or the Junior Collateral (as defined below).

(B)     Subject to the Carve-Out and Professional Fee Escrow, pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected non-avoidable junior priority replacement lien on, and security interest in, all property, whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to Bankruptcy Code section 541(a)), property of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, that is subject only to valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date to the extent permitted by Bankruptcy Code section 546(b), which valid, perfected and unavoidable liens are senior in

10

priority to the security interests and liens in favor of the Prepetition Secured Parties (the "<u>Junior Collateral</u>").

11.     For purposes hereof, the "<u>Carve-Out</u>" shall mean the sum of: (A) all fees required to be paid to the clerk of the Court and the Bankruptcy Administrator; (B) reasonable fees and expenses up to $20,000 in the aggregate incurred by a trustee appointed under Bankruptcy Code section 726(b); and (C) subject to the Committee Monthly Cap with respect to Professional Fees incurred by Professional Persons retained by the Creditors' Committee or any other statutory committee appointed in the Chapter 11 Cases, including any Professional Fees permitted to be incurred under the Investigation Budget, and (D) all fees, costs and expenses, billed or unbilled, incurred by professionals retained by the Debtors up to and including the Termination Date (plus a maximum of $75,000 to be applied to fees and expenses incurred by the Debtors' professionals following the Termination Date), to the extent allowed and regardless of the timing of said allowance, whether by interim order, procedural order or otherwise, including all accrued and unpaid reasonable fees, costs, and expenses (the "<u>Professional Fees</u>") incurred by persons or firms retained by the Debtors, the Creditors' Committee or any other statutory committee appointed in the Chapter 11 Cases (if any) pursuant to Bankruptcy Code section 327, 328, or 363 (collectively, the "<u>Professional Persons</u>"); provided that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clause above, on any grounds. For the avoidance of doubt and notwithstanding anything to the contrary herein or in the Credit Agreement, the Carve-Out and the Professional Fee Escrow shall be senior to all liens and claims arising out of, or related to, the Credit Agreement or Prepetition Debt Documents, including the Prepetition Liens, Prepetition Obligations, the Adequate Protection Liens, Adequate Protection Obligations and any and all other forms of adequate protection, liens or claims securing or relating to the Prepetition Obligations.  Without limiting or impairing the

11

Prepetition Liens, the Adequate Protection Liens or Adequate Protection Obligations of the Prepetition Secured Parties, the Carve-Out amounts set forth in the Approved Budget for Professional Fees and the Bankruptcy Administrator's Office Quarterly Fees (the "Quarterly Fees") shall be set aside weekly (with, for purposes of calculation, the Petition Date, representing the day upon which the first weekly set aside shall be made) and held by the Debtors in a separate segregated account (the "Professional Fee Escrow") for the Professional Persons for the sole purpose of funding allowed fees and expenses of Professional Persons and the Quarterly Fees. To the extent funds in the Professional Fee Escrow account are not used for such purposes, such amount of unused funds shall be paid to the Agent, for itself and for and on behalf of the Prepetition Secured Lenders, for application to the Prepetition Secured Claims. Any amounts payable by the Debtors to Professional Persons on account of Professional Fees shall only be paid upon allowance or authorization by the Court from funds on deposit in the Professional Fee Escrow.

12. As additional adequate protection, the Debtors are authorized and directed to pay to the Agent, for the benefit of the Prepetition Secured Lenders, due beginning on the first day of the month immediately following the Petition Date and each subsequent month thereafter during the pendency of the Chapter 11 Cases, payments in the amount of $116,167.00 to be applied as set forth in the Credit Agreement.

13. The Debtors shall comply in all respects with the provisions of this paragraph 13 (the "Budget Provision"). The initial budget shall cover the 12-week period beginning the business week of the Petition Date (the "Initial Budget Period") and be in the form attached hereto as **Exhibit A** (the "Initial Budget"). On or before the last business day of the ninth week of the Initial Budget Period, the Debtors shall deliver an updated budget (the "Second Budget") for the 12-week period following the Initial Budget Period (the "Second Budget Period"). On or before the last

12

business day of the ninth week of the Second Budget Period, the Debtors shall deliver an updated budget (the "Third Budget" and, together with the Initial Budget and the Second Budget, collectively, the "Budgets") for the 12-week period following the Second Budget Period (the "Third Budget Period"). The Budgets shall be delivered to the Agent, with a copy delivered to the Creditors' Committee. The Initial Budget will be the first budget utilized for reporting and permitted variance purposes (the "Approved Budget"). The Second Budget and the Third Budget shall be of no force and effect unless and until approved by the Agent. The Agent shall approve or reject the Second Budget or the Third Budget within seven (7) business days after the last day that delivery thereof is permitted as set forth above; provided that each of the Second Budget and the Third Budget shall be deemed approved upon the passage of such seven (7) business day period with no objection raised by the Agent. Upon the approval by the Agent, each of the Second Budget and the Third Budget shall become the "Approved Budget" for the Second Budget Period and the Third Budget Period, as applicable. Every week (beginning with the first full week after the Petition Date), on the last business day of such week, the Debtors shall deliver to the Agent and the advisors to the Creditors' Committee, a weekly variance report from the previous week comparing the actual cash receipts and disbursements of the Debtors with the receipts and disbursements in the Approved Budget (the "Budget Variance Report"). The Budget Variance Report shall include, among other things, (a) details regarding amounts paid under any order of the Court; (b) a detailed comparison, including commentary, of each week's performance against the Approved Budget; and (c) a detailed comparison, including commentary, of aggregate performance since the commencement of the Approved Budget against such Approved Budget. Any budget variance should not exceed, on an aggregate basis, 10% of the authorized payments set forth in an Approved Budget. In the event the Agent fails to approve the Second Budget and/or

13

Third Budget within the time period allotted herein, the Debtors may seek approval of the respective budget from the Court on an expedited basis. The Agent reserves all rights to object to, or otherwise oppose, any request to the Court by the Debtors seeking approval of the Second Budget or Third Budget.

14. This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to request additional forms of adequate protection at any time or any party-in-interest's right to object thereto.

15. The Debtors' right to use the Cash Collateral pursuant to this Interim Order shall automatically terminate (the date of any such termination, the "Termination Date") without further notice or court proceeding, and without prejudice to the Carve Out or Professional Fee Escrow on the earliest to occur of (i) 45 days after the Petition Date (unless such period is extended with the consent of the Agent), if the Final Order on the Motion has not been entered by this Court on or before such date, (ii) any such expiration date set forth in the Final Order that is not thereafter extended by a subsequent order, (iii) the effective date of any confirmed chapter 11 plan in any of the Chapter 11 Cases, (iv) the date of the consummation of a sale or other disposition of all or substantially all of the assets of the Debtors, and (v) the occurrence of any of the events set forth in this paragraph 15(a) through (f) below, unless waived by the Agent (each of the following events, a "Termination Event" and collectively, the "Termination Events"):

(a) the Debtors' failure to: (i) use the Collateral, including without limitation Cash Collateral, in accordance with the Approved Budget and the Budget Provision or otherwise comply in any respect with any provision of this Interim Order (including, without limitation, the failure to timely make the payments identified in paragraph 12); or (ii) comply with any other

14

covenant or agreement specified in this Interim Order; in each case where such failure shall have continued unremedied for five (5) business days following the occurrence of such failure;

(b)     the date this Interim Order (or the Final Order, as applicable), or any provision of thereof, shall for any reason be reversed, modified, vacated or stayed, or cease to be valid and binding, or any Debtor shall so seek or assert such relief in any pleading filed in any court;

(c)     the date (i) any Chapter 11 Case shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code or any Debtor shall file a motion or other pleading seeking the dismissal or conversion of any Chapter 11 Case pursuant to Bankruptcy Code section 1112; or (ii) a trustee, responsible officer, or an examiner (other than a fee examiner) pursuant to Bankruptcy Code section 1104, or a receiver or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), is appointed or elected, as applicable, in any Chapter 11 Case, any Debtor applies for, consents to, or acquiesces in, any such appointment, or the Court shall have entered an order providing for such appointment, in each case without the prior written consent of the Agent in its sole discretion;

(d)     other than with respect to the Carve-Out and Professional Fee Escrow, any Debtor shall create or incur, or the Court enters an order granting, any claim which is pari passu with or senior to any of the Prepetition Liens or Prepetition Obligations or the Adequate Protection Liens and Adequate Protection Obligations granted under this Interim Order;

(e)     the consummation of a sale or disposition of any material assets of the Debtors other than in the ordinary course of business or as expressly authorized by the Prepetition Secured Lenders and/or the Court;

15

(f)     commencement of any action, including the filing of any pleading, by any Debtor, or direct or indirect non-debtor affiliate or subsidiary of a Debtor, or any Debtor Representative, against any of the Prepetition Secured Parties with respect to any of the Prepetition Obligations, the Prepetition Debt Documents or the Prepetition Liens;

(g)     the entry of an order granting relief from the automatic stay with respect to any material property or asset of a Debtor; or

(h)     a Debtor shall knowingly furnish or knowingly make any false, inaccurate, or incomplete representation, warranty, certificate, report, or summary to the Prepetition Secured Lenders.

16.     Upon the occurrence of a Termination Event and following the giving of not less than five (5) business days' advance written notice (the "Enforcement Notice") to counsel to the Debtors, counsel to the Creditors' Committee (if any) and the Bankruptcy Administrator (the "Notice Period"), and subject to the Carve Out and Professional Fee Escrow protections set forth herein, the Agent may exercise any remedies to it under this Interim Order, the Credit Agreement and applicable non-bankruptcy law, including but not limited to (a) set off and apply immediately any and all amounts in accounts, other than the Professional Fee Escrow, maintained by the Debtors against the Adequate Protection Obligations and Prepetition Obligations owed to the Prepetition Secured Parties and otherwise enforce rights against the Collateral for application towards the Adequate Protection Obligations and Prepetition Obligations; (b) take any and all actions necessary to take control of the Prepetition Collateral and/or the Collateral, including any Cash Collateral; and (c) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the Prepetition Debt Documents or applicable law to effect the repayment and satisfaction of the Adequate Protection Obligations and Prepetition Obligations owed to the

16

Prepetition Secured Parties. The rights and remedies of the Agent specified herein are cumulative and not exclusive of any rights or remedies that they may otherwise have. The only permissible basis for the Debtors, the Creditors' Committee (if any), the Bankruptcy Administrator or any other party to contest, challenge or object to an Enforcement Notice shall be solely with respect to the validity of the Termination Event(s) giving rise to such Enforcement Notice (*i.e.* whether such Termination Events validly occurred and have not been cured or waived in accordance with this Interim Order). The automatic stay pursuant to Bankruptcy Code section 362 shall be automatically terminated at the end of the Notice Period, without further notice or order of the Court, unless the Agent elects otherwise in a written notice to the Debtors, and the Agent shall be permitted to exercise all rights and remedies, including with respect to the Collateral (including, without limitation, any Cash Collateral), set forth in this Interim Order, the Credit Agreement, and as otherwise available at law without further order or application or motion to the Court, and without restriction or restraint by any stay under Bankruptcy Code sections 362 or 105 or otherwise.

17.     The Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted to it hereunder. Whether or not the Agent chooses to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute, subordination, contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined in the Bankruptcy Code), impairment, subordination (whether equitable,

17

contractual or otherwise) or other Challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law. If the Agent chooses to file any financing statements, notices of liens or similar instruments, the Debtors will cooperate and assist in any such filings as reasonably requested by the Agent, and the automatic stay is hereby modified to allow such filings. The Agent may cause a certified copy of this Interim Order to be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized, and directed, to accept such certified copy of this Interim Order for filing and recording. The Debtors shall execute and deliver to the Agent all such agreements, financing statements, instruments and other documents as each such party may reasonably request to evidence, confirm, validate or perfect the Adequate Protection Liens. Notwithstanding anything to the contrary in the Motion or this Interim Order, for purposes of this Interim Order, in no event shall the Adequate Protection Liens granted under this Interim Order attach to, any lease, license, permit, contract, or agreement (including any operating and joint venture agreements) or other property right, to which any Debtor is a party, or any of such relevant Debtor's rights or interests thereunder, if and for so long as the grant of such security interest would constitute or result in: (i) the abandonment, invalidation, unenforceability, or other impairment of any right, title, or interest of any Debtor therein, or (ii) a breach or termination pursuant to the terms of, or a default under, any such lease, license, contract, agreement, or other property right pursuant to any provision thereof, unless, in the case of each of clauses (i) and (ii), the applicable provision is rendered ineffective by applicable non-bankruptcy law or the Bankruptcy Code (such leases, licenses, contracts or agreements, or other property rights are collectively referred to as the "Specified Contracts"); provided that the foregoing shall not preclude any counterparty to a Specified Contract from an opportunity to be heard in this Court on notice

18

with respect to whether applicable non-bankruptcy law or the Bankruptcy Code renders such provision ineffective. Notwithstanding the foregoing, the Adequate Protection Liens shall in all events attach to all proceeds, products, offspring, or profits from all sales, transfers, dispositions, or monetizations of any and all Specified Contracts.

18.    Notwithstanding any order dismissing any of these Chapter 11 Cases under Bankruptcy Code section 1112 or otherwise entered at any time, the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Adequate Protection Obligations shall have been paid and satisfied in full (and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest). This Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph.

19.    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect: (i) the validity, priority or enforceability of any obligations of the Debtors incurred hereunder prior to the date of the entry of an order granting such reversal, stay, modification or vacatur (the "Reversal Order"); or (ii) the validity, priority, perfection or enforceability of the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of the Collateral (including the Cash Collateral) or any obligations incurred by the Debtors hereunder, as the case may be, prior to the date of the entry of the Reversal Order shall be governed in all respects by the original provisions of this Interim Order, and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in Bankruptcy Code section 363(m) with respect to all uses of the Collateral (including the Cash Collateral) for periods prior to the date of the entry of the Reversal Order.

19

20. The Adequate Protection Liens and all other rights, claims, security interests and remedies of the Prepetition Secured Parties granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired or discharged by the entry of an order (i) converting any of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, dismissing any of these Chapter 11 Cases or by any other act or omission or (ii) confirming a plan of reorganization in any of the Chapter 11 Cases, and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining obligations of the Debtors hereunder; provided that any plan of reorganization or liquidation shall supersede and replace the terms of the Interim Order upon its effectiveness in accordance therewith. The terms and provisions of this Interim Order shall continue in these Chapter 11 Cases, in any successor cases, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens and other claims granted pursuant to this Interim Order, and all other rights, claims, security interests and remedies of the Prepetition Secured Parties granted by the provisions of this Interim Order shall continue in full force and effect as provided herein.

21. The stipulations, releases and admissions contained in this Interim Order, including in paragraph 5 hereof, shall be binding upon the Debtors and their respective Debtor Representatives in all circumstances. The stipulations, releases and admissions contained in this Interim Order, including in paragraph 5 hereof and the protections afforded the Carve Out and the Professional Fee Escrow, shall be binding upon all other parties in interest, including the Creditors' Committee (if any) or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), unless and to the extent (a) the Creditors' Committee (if any) or any other party in interest other than any Debtor (including any Trustee), in each case, to the extent having requisite standing, has duly filed an adversary proceeding challenging in whole or part the validity,

20

enforceability, priority or extent of the Prepetition Obligations or the liens on the Prepetition Collateral securing the Prepetition Obligations held by or on behalf of the Prepetition Secured Parties or otherwise asserting or prosecuting any avoidance actions, recharacterization, subordination, "lender liability", or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against the Prepetition Secured Parties in connection with any matter related to the Prepetition Obligations, or the Prepetition Collateral or the Prepetition Liens by no later than the later of (i) in the case of any such adversary proceeding filed by a party in interest with requisite standing, seventy-five (75) days after the date of entry of the Interim Order, provided that if a Creditors' Committee is appointed prior to the expiration of such seventy-five (75) days, such Creditors' Committee shall have sixty (60) days from the date of its appointment to file such an adversary proceeding, and (ii) any such later date agreed to in writing by the Agent (the time period established by the later of the foregoing clauses (i) and (ii), the "Challenge Period"), and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such Claim or Defense in any such duly filed adversary proceeding. If no such adversary proceeding is timely filed prior to the expiration of the Challenge Period by a Creditors' Committee or a party in interest, in any case which has the appropriate standing, without further order of this Court: (x) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined in the Bankruptcy Code), impairment, subordination (whether equitable, contractual or otherwise) or other Challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law, for all purposes in these Chapter 11 Cases and any subsequent chapter 7 cases; and (y) the

21

Prepetition Obligations, the Prepetition Debt Documents, and the Prepetition Liens shall not be subject to any other or further Challenge and any party in interest shall be forever enjoined and barred from taking any such action or seeking to exercise the rights of the Debtors' estates , including any successor thereto (including any Debtor Representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period). If any such adversary proceeding is timely filed by a party in interest with appropriate standing prior to the expiration of the Challenge Period, the stipulations and admissions contained in this Interim Order, including in paragraph 5 hereof, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Creditors' Committee and any other Person (as defined in the Credit Agreement), including any Trustee, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding. Nothing in this Interim Order vests or confers on any Person, including a Creditors' Committee (if any) or Trustee, standing or authority to pursue any cause of action belonging to the Debtors or their estates.

22.     Notwithstanding any other provision in this Interim Order to the contrary, and consistent with the Prepetition Debt Documents, this Interim Order is without prejudice to, and does not constitute a waiver, expressly or implicitly, or relinquishment, of the Prepetition Secured Parties' respective rights with respect to any person or entity, or with respect to any other collateral owned or held by any person or entity. The rights of the Prepetition Secured Parties are expressly reserved and entry of this Interim Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, or relinquishment, of:

(i)     the Prepetition Secured Parties' respective rights to bring or be heard on any matter brought before this Court;

(ii)    the Prepetition Secured Parties' respective rights under the Credit Agreement, the Bankruptcy Code or applicable non-bankruptcy law,

22

including, without limitation the rights, if any, to (v) request modification of the automatic stay, (w) sell or foreclose on any Collateral under applicable law, (x) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to a case under chapter 7, or appointment of a chapter 11 trustee, examiner or receiver, (y) propose, subject to the provisions of Bankruptcy Code section 1121, a chapter 11 plan; or (z) take any action specified in paragraph 16 above;

(iii)    the Prepetition Secured Parties' respective rights to seek any other or supplemental relief in respect of the Debtors;

(iv)    the Prepetition Secured Parties' right, to seek modification of the grant of adequate protection provided under this Interim Order so as to provide different or additional adequate protection; or

(v)    any other respective rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Secured Parties.

23.    Subject to the entry of a Final Order, except to the extent of the Carve-Out and the Professional Fee Reserve, no costs or expenses of administration of the Chapter 11 Cases, which have been or may be incurred in any of the Chapter 11 Cases at any time shall be charged against or recovered from any Prepetition Secured Party, any of the Prepetition Obligations, any of their respective claims, or the Collateral pursuant to Bankruptcy Code sections 105(a) or 506(c), or otherwise, without the prior written consent of the affected Prepetition Secured Parties, each in its sole discretion, and no such consent shall be implied from any other action, inaction, or acquiescence by any of the Prepetition Secured Parties or their respective representatives.

24.    The Prepetition Secured Parties shall be entitled to apply the payments or proceeds of the Collateral in accordance with this Interim Order and the provisions of the Credit Agreement, and in no event shall any of the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral or otherwise.

25.    For the avoidance of doubt, the Debtors shall not be allowed to use the Cash Collateral to pay fees and expenses of any Professional Person retained by a Creditors' Committee

23

or any other statutory committee in excess of the Committee Monthly Cap; provided that any unused amounts may be carried forward to a subsequent month.

26. The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including the Prepetition Secured Parties, any Creditors' Committee, the Debtors and their respective successors and assigns (including any Trustee hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to Bankruptcy Code section 1104, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) as provided herein. The protections afforded to the Prepetition Secured Parties under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order dismissing any or all of the Chapter 11 Cases or converting any or all of the Chapter 11 Cases into a case(s) under chapter 7 of the Bankruptcy Code and the Adequate Protection Liens shall continue in the Chapter 11 Cases, in any such successor case(s) or after any such dismissal. The Adequate Protection Liens shall maintain their priorities as provided in this Interim Order and the Final Order, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness, or any conversion of any of the Chapter 11 Cases into a case(s) pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of the Chapter 11 Cases, or by any other act or omission until the Prepetition Obligations and the Adequate Protection Obligations are indefeasibly paid in full in cash (and any letters of credit cash collateralized in accordance with the terms of the Credit Agreement).

27. In permitting the use of the Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, the Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person"

or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to any of the Debtors, their creditors or estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors. Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in Bankruptcy Code section 101(2)).

28.     Notwithstanding anything to the contrary herein or in any other order of this Court, in determining the relative priorities and rights of the Prepetition Secured Parties (including, without limitation, the relative priorities and rights of the Prepetition Secured Parties with respect to the adequate protection granted hereunder), such relative priorities and rights shall continue to be governed by the Credit Agreement.

29.     This Interim Order shall not serve as a waiver or relinquishment of any rights that the Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.

30.     The automatic stay shall be modified or lifted to the extent necessary to allow the Agent to provide any notices to the Debtors as contemplated by and in accordance with this Interim Order.

31.     Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Prepetition

Secured Parties' right to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection.

32.     This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry.  There shall be no stay of execution of effectiveness of this Interim Order. To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

33.     To the extent of any conflict between or among (a) the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" or "as provided in" or words to that effect with respect to the Credit Agreement, the terms and provisions of this Interim Order shall govern. This Interim Order shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof, notwithstanding the possible application Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Interim Order on this Court's dockets in the Chapter 11 Cases.

34.     The Final Hearing is scheduled for _____, 2020 at _____ _.m., prevailing Central time, before this Court. The Debtors shall promptly mail or otherwise serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Creditors' Committee. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) the Debtors, PO Box 1608, Jasper, Alabama 35502; (b) proposed counsel to the Debtors, Waller Lansden Dortch & Davis, LLP, 1901 Sixth Avenue N, Suite 1400,

26

Birmingham, Alabama 35203, <u>Attention</u>: Jesse S. Vogtle, Jr., Eric T. Ray, Paul H. Greenwood.

**and** 511 Union Street, Suite 2700, Nashville, Tennessee, <u>Attention</u>: John Tishler, Tyler Layne; (c) counsel to the Prepetition Secured Parties, Reed Smith LLP, 1717 Arch Street, Suite 3100, Philadelphia, PA 19103, Attn: Matthew E. Tashman, Esq. and Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, Alabama 35203, Attention:  Derek F. Meek; (d) counsel to any statutory committee appointed in these Chapter 11 Cases; (e) the Office of the Bankruptcy Administrator for the Northern District of Alabama, 1800 5th Avenue North, Birmingham, AL 35203, Attn: Jon Dudeck; and (f) all persons and entities that have filed a request for service of filings in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002, in each case to allow actual receipt by the foregoing no later than _____, 2020 at 4:00 p.m. (prevailing Central Time).

35.     This Court shall retain jurisdiction to enforce the terms of this Interim Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Order.

Dated: _____, 2020.

_____
United States Bankruptcy Judge

27

**EXHIBIT A**

**Initial Budget**

28

**FM Coal, LLC**
DIP Cash Flow Forecast
*(USD 000's)*

| | Forecast 1 | Forecast 2 | Forecast 3 | Forecast 4 | Forecast 5 | TOTAL |
|---|---|---|---|---|---|---|
| Week Number --> | 1 | 2 | 3 | 4 | 5 | |
| Week Start Date --> | 09/01/20 | 09/07/20 | 09/14/20 | 09/21/20 | 09/28/20 | 09/01/20 |
| Week End Date --> | 09/06/20 | 09/13/20 | 09/20/20 | 09/27/20 | 10/04/20 | 10/04/20 |
| **Cash Receipts** | | | | | | |
| Operating Receipts | 1,001 | 997 | 933 | 1,098 | 1,089 | 5,117 |
| Proceeds from sale of equipment | - | - | 500 | - | - | 500 |
| **Total Cash Receipts** | **1,001** | **997** | **1,433** | **1,098** | **1,089** | **5,617** |
| **Operating Disbursements** | | | | | | |
| Payroll Costs | - | (383) | - | (329) | (234) | (946) |
| Fuel | (89) | (89) | (89) | (89) | (89) | (447) |
| Contractors | - | (788) | (422) | (422) | (422) | (2,054) |
| Other Operating Disbursements | - | (91) | (76) | (102) | (91) | (359) |
| **Total Operating Disbursements** | **(89)** | **(1,351)** | **(587)** | **(942)** | **(836)** | **(3,807)** |
| **Net Cash Flow from Operations** | **911** | **(354)** | **845** | **155** | **253** | **1,810** |
| **Non-Operating Disbursements** | | | | | | |
| Highwall Miner Loan | - | - | - | - | - | - |
| Capital Expenditures | - | - | - | (400) | - | (400) |
| **Total Non-Operating Disbursements** | **-** | **-** | **-** | **(400)** | **-** | **(400)** |
| **Restructuring** | | | | | | |
| Restructuring Fees Escrow | - | (117) | (107) | (117) | (102) | (441) |
| Secured Lender Professional Fees | - | (18) | (18) | (18) | (18) | (70) |
| Bankruptcy Administrator Fees | - | (117) | - | - | - | (117) |
| Adequate Protection Payments | - | - | - | - | - | - |
| Critical Vendor Claims | - | - | - | (400) | - | (400) |
| Utility Deposits | - | - | - | - | - | - |
| Insurance Deposits | - | - | - | - | - | - |
| 503(b)9 Claims | - | - | - | - | - | - |
| General Unsecured Dividend | - | - | - | - | - | - |
| **Total Restructuring** | **-** | **(251)** | **(124)** | **(534)** | **(119)** | **(1,028)** |
| **Net Cash Flow** | **911** | **(605)** | **721** | **(779)** | **134** | **383** |
| **Liquidity Summary** | | | | | | |
| Beginning Cash Balance | 195 | 1,106 | 501 | 1,222 | 443 | 195 |
| Net Cash Flow | 911 | (605) | 721 | (779) | 134 | 383 |
| **Total Available Liquidity** | **1,106** | **501** | **1,222** | **443** | **577** | **577** |